IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **United States of America,** | Case No.  1:18cr33 |
| **Plaintiff,** | |
| -vs- | JUDGE PAMELA A. BARKER |
| **Ashis Rakhit, et al.,** | |
| **Defendants** | **MEMORANDUM OPINION AND ORDER** |

Currently pending is the Motion of Non-Parties Ashis K. Rakhit, M.D., Inc. and Ohio Cardiology Associates, Inc. to Intervene and for Leave to File a Motion to Shift Costs, *Instanter*. (Doc. No. 124.)  The United States filed a Brief in Opposition on December 29, 2020, to which Non-Parties Ashis K. Rakhit, M.D., Inc. and Ohio Cardiology Associates, Inc. replied on January 5, 2021. (Doc. Nos. 126, 127.)  For the following reasons, the Motion for Leave (Doc. No. 124) is DENIED to the extent it seeks formal intervention but GRANTED to the extent it seeks leave to file a Motion to Shift Costs, *Instanter*.

**I.      Relevant Background**

Defendants Ashis Rakhit ("Dr. Rakhit") and Jayati Gupta Rakhit ("Dr. Gupta") are husband and wife medical doctors who specialize in cardiovascular disease and internal medicine.  (Doc. No. 46 at ¶ 1.)  In the mid-1990s, Dr. Rakhit formed Ashis K. Rakhit, M.D., Inc., and Dr. Gupta formed Ohio Cardiology Associates, Inc. (hereinafter referred to as "the Corporate Entities"). (*Id*. at ¶ 2.) Collectively, Defendants had four practice locations, in Cleveland, Strongsville, and Parma, Ohio. (*Id*. at ¶ 3.)

On January 17, 2018, Defendants were indicted on multiple counts of (1) conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 (Count 1); (2) health care fraud in violation of 18 U.S.C. § 1347 and 2 (Counts 2 through 12); (3) false statements relating to health care matters in violation of 18 U.S.C. § 1035 and 2 (Counts 13 through 18); and (4) distribution of controlled substances in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C), and (b)(2) (Counts 19 through 24). (Doc. No. 1.) The Indictment charged that, from January 2011 to the present, Defendants illegally distributed prescription-controlled substances to customers located in the Northern District of Ohio, including prescriptions for oxycodone, tramadol, and alprazolam. (*Id.* at ¶ 23.) It further charged that, during this same time period, Defendants committed health care fraud by submitting billings to Medicare and Medicaid for services that were not medically necessary, or by using inflated or "upcoded" codes that reflected services more costly than those which were actually performed. (*Id.* at ¶¶ 35.) Lastly, Defendants were charged with knowingly making materially false and fraudulent statements in connection with claims for reimbursement, including false diagnoses for certain patients. (*Id.* at ¶ 44.)

On January 23, 2018, law enforcement agents executed search warrants at the Defendants' practice locations. (Doc. No. 104 at p. 2.) The search warrants authorized the government to seize fourteen (14) categories of documents, including the following: (1) certain patient records, (2) prescriptions and/or prescription logs, patient sign-in sheets and/or logs, and any other information showing patient volume; (3) contracts, agreements, papers, and affiliated records relating to purchases of medical equipment and supplies; (4) documents relating to all current and former employees; (5) documents consisting, concerning or relating to work and personal diaries, calendars, logs, appointment books and schedules; (6) correspondence to and from Medicare, Medicaid and/or private

insurance companies; and (7) financial books, records, and documents. *See, e.g.,* Doc. No. 125-1 at PageID#s 2595-2596.

On that same date, the United States served administrative subpoenas *duces tecum* on (1) Dr. Rakhit, (2) Dr. Gupta, (3) Ashis K. Rakhit, M.D., Inc.; and (4) Ohio Cardiology Associates, Inc. (Doc. No. 104-1.) These subpoenas were issued pursuant to 18 U.S.C. § 3486 and required the recipients to preserve and produce the following twelve (12) categories of documents:

> 1. All contracts, agreements, papers, and affiliated records constituting, concerning, or relating to purchases of medical equipment and supplies by [the recipient] or any representative acting on behalf of [the recipient] to include, but not be limited to manufacturer catalogs, purchase orders, invoices, and receipts.
>
> 2. All correspondence, including but not limited to letters and emails, constituting, concerning, or relating to efforts to collect copayments and/or deductibles for individuals that receive health care coverage from Medicare (including Medicare contractors), Medicaid, Medicaid Managed Care Organizations (MCOs), and private insurance companies.
>
> 3. All correspondence and cancelled checks relating to notice of overpayment and request for refunds from Medicare (including Medicare contractors), Medicaid, Medicaid Managed Care Organizations, and private insurance companies.
>
> 4. All correspondence to and from Medicare (including Medicare contractors), Medicaid, Medicaid Managed Care Organizations, and private insurance companies, including, but not limited to, manuals, advisories, newsletters, bulletins, and publications.
>
> 5. All correspondence to and from patients regarding Medicare (including Medicare contractors), Medicaid, Medicaid Managed Care Organizations and private insurance companies.
>
> 6. Financial books, records, and documents constituting, concerning, or relating to [the recipient], including, but not limited to, records of payment by [the recipient].
>
> 7. All contracts, agreements, or documents affiliated with any outside medical insurance company and [the recipient].

>8. All contracts, agreements, or documents affiliated with any nuclear stress test technician or ultrasound technician for services provided on behalf of [the recipient], including, but not limited to, contracted technicians and technical support.
>
>9. All correspondence, including but not limited to emails, between [the recipient], and any entity where [the recipient] provided services or any entity on behalf of which [the recipient] provided services.
>
>10. All documents relating to [the recipient]'s work schedule, including, but not limited to, calendars, timesheets, appointment ledgers, hospital schedules and Microsoft Outlook calendars for all cardiology and internal medicine services.
>
>11. All documents that relate to any amount charged by or amount reimbursed to [the recipient] for any procedure, treatment or related service provided to the beneficiaries listed in Attachment B, including, but not limited to, superbills, claims, remittance notices, explanation of benefits, and other documents that relate to the description of the procedure, service, or treatment, and to any codes and units of service billed. Please include all correspondence with these patients.
>
>12. The complete medical records for the beneficiaries listed in Attachment B,[1] including, but not limited to: (a) orders, (b) facility and/or clinical records, (c) treatment plans, (d) SOAP notes, (e) history and physical examinations, (f) physician progress notes, (g) nursing notes, (h) any staff notes relating to cardiology and/or internal medicine, (i) daily treatment notes, (j) flow sheets, (k) equipment supply/order sheets, (l) labs and diagnostic test results, (m) nuclear stress tests results, including the nuclear camera file, (n) all catheterization films in digital or other format.

*See* Doc. Nos. 104-1, 104-2. The Subpoenas sought documents relating to the seven-year time period between January 1, 2011 and the date of issuance of the subpoena. (Doc. No. 104-2 at PageID# 2037).

On March 27, 2018, the United States served another set of administrative subpoenas pursuant to 18 U.S.C. § 3486, again on (1) Dr. Rakhit, (2) Dr. Gupta, (3) Ashis K. Rakhit, M.D., Inc.; and (4) Ohio Cardiology Associates, Inc. (Doc. No. 104-3.) These Subpoenas sought the same material as the January 2018 subpoenas but with respect to 32 additional patients. (*Id*.) The United States

---

[1] Attachment B to the Subpoenas listed 265 specific patients. (Doc. No. 104-2 at PageID# 2041-2047.)

4

indicates that each of these subpoenas were served on counsel for the named Defendants. (Doc. No. 104 at p. 4.)

On April 10, 2018, counsel for the United States emailed defense counsel for an update regarding Defendants' production in response to the subpoenas. (Doc. No. 104-4.) In that email, counsel for the United States stated that "[a] lot of what we requested was seized during the execution of the search warrant, but we believe that nine of the patient files listed in the subpoenas were not located during the search and we would like the files produced or a written response explaining why they are not being produced." (*Id.*) On April 25, 2018, defense counsel produced responsive documents on behalf of Defendants, as well as on behalf of the Corporate Entities. (Doc. No. 104-6.) According to the United States, this production included the files for six of the nine missing patients. (Doc. No. 104-7.)

Thereafter, on May 3, 2018, the United States served additional administrative subpoenas pursuant to 18 U.S.C. § 3486, on both Defendants and the Corporate Entities. (Doc. No. 104-8.) These Subpoenas sought the same material as the January and March 2018 subpoenas but with respect to one additional patient. (*Id.*) The United States avers that each of these subpoenas were served on counsel for the named Defendants. (Doc. No. 104 at p. 5.)

On January 16, 2019, the grand jury returned a Superseding Indictment against Dr. Rakhit and Dr. Gupta, which added numerous charges of health care fraud and unlawful distribution of controlled substances. (Doc. No. 46.)

On December 17, 2019, the United States served an administrative subpoena on Defendants and Ohio Cardiology Associates, Inc., pursuant to 18 U.S.C. § 3486. (Doc. No. 104-9.) This subpoena sought the production of "all patient medical records" from January 24, 2018 through the

5

present for thirteen (13) specific patients. (*Id*.) On January 29, 2020, defense counsel produced responsive documents for two of the thirteen patients identified in the December 2019 subpoena. (Doc. No. 104-10.)

On May 12, 2020, the Court conducted a telephonic status conference with counsel for the United States and counsel for Defendants. During the conference, the United States advised the Court that it intended to file a motion to enforce the administrative subpoenas at issue. *See* Non-Document Order dated May 12, 2020. At that time, the Court "advised that any motion seeking the enforcement remedy [pursuant to 18 U.S.C. § 3486] can be filed with this Court, as distinguished from the miscellaneous duty judge." (*Id.*) Defendants raised no objection to this procedure during the conference call. (*Id*.)

On June 11, 2020, the United States filed a Motion to Enforce Administrative Subpoenas as against Defendants. (Doc. No. 104.) Shortly thereafter, on July 16, 2020, the United States filed a Motion to Enforce Administrative Subpoenas as against the Corporate Entities. (Doc. No. 110.) Defendants opposed both Motions. (Doc. Nos. 106, 117.)

On September 15, 2020, the Court issued a lengthy Memorandum Opinion & Order in which it denied the Motion to Enforce as against Defendants but granted the Motion to Enforce as against the Corporate Entities. (Doc. No. 119.) The Court ordered the Corporate Entities to comply with the administrative subpoenas at issue and produce any responsive documents that had not yet been produced, with priority given to documents relating to those patients that are addressed in the parties' expert reports. (*Id*. at p. 53.)

In November 2020, the Corporate Entities produced over 35, 000 documents in response to the United States' administrative subpoenas. (Doc. No. 124-2.) In so doing, the Corporate Entities

state that they incurred $13,736.30 in expenses relating to collecting, copying, scanning, Bates stamping, and producing these documents. (Doc. No. 124-1 at p. 4; Doc. No. 124-3.)

On December 15, 2020, the Corporate Entities filed a Motion for Leave to Intervene and for Leave to File a Motion to Shift Costs, *Instanter*. (Doc. No. 124.) The United States filed a Brief in Opposition on December 29, 2020, to which the Corporate Entities replied on January 5, 2021. (Doc. Nos. 126, 127.)

**II.      Analysis**

In their Motion, the Corporate Entities move the Court to intervene for the limited purpose of filing a motion to shift the costs of responding to the United States' administrative subpoenas. (Doc. No. 124.) The Corporate Entities note that the Court allowed the United States to file its Motion to Enforce Administrative Subpoenas against the Corporate Entities in the instant action, rather than requiring it to file a separate miscellaneous action. (*Id.*) Having done so, the Corporate Entities assert that the Court should likewise allow them to file a motion in this case in order to seek reimbursement for the costs they incurred in responding to the United States' allegedly "overly broad and burdensome" subpoenas. (*Id.*) In their attached Motion to Shift Costs, the Corporate Entities go on to argue that the United States should be held responsible for these costs because the subpoenas "were broadly worded, covered a 7-year time period, and requested documents that could have been seized years ago (when the government executed search warrants in 2018)." (Doc. No. 124-1 at p. 1.)

In response, the United States principally addresses the Corporate Entities' Motion for Leave to Intervene. (Doc. No. 126.) The United States argues that leave to intervene should be denied because, as non-parties to the instant action, the Corporate Entities "have no authority to intervene in this matter." (*Id.* at p. 6.) Specifically, citing *United States v. Perry*, 360 F.3d 519 (6th Cir. 2004),

7

the United States maintains that there is "no mechanism [] for a private citizen to intervene in a criminal case." (*Id*.) The United States further asserts that intervention is not appropriate because the Corporate Entities (1) are not seeking a first opportunity to object to the administrative subpoenas; (2) do not cite a local rule that permits intervention upon application to the Court; (3) do not seek to challenge an Order that impairs their rights; and (4) do not claim the need to prevent the disclosure of privileged information. (*Id*. at p. 7.) Notably, the United States does not dispute that it was at the United States' own request that this Court considered the underlying Motion to Enforce Administrative Subpoenas against the Corporate Entities in the instant case.

The United States then argues that, even if the Court were to grant leave to intervene, the Corporate Entities' Motion to Shift Costs should be denied because they "waived any right to claim that the administrative subpoenas were overly broad and that compliance was unduly burdensome."[2] (*Id*.) The United States asserts that the Corporate Entities could have raised such a claim prior to complying with the subpoenas via a Motion to Quash and/or in opposition to the United States' Motion to Enforce but failed to do so. (*Id*.) Instead, the United States argues, the Corporate Entities "partially complied with the subpoenas, forced the Court to order them to comply fully, and then waited until after their compliance to say that compliance was burdensome." (*Id.* at p. 8.) Thus, the United States argues the Court should find that the Corporate Entities forfeited their right to raise this issue now. (*Id*.)

The Court first considers the threshold question of whether the Corporate Entities should be permitted to file their Motion to Shift Costs in this action. It is true that the Federal Rules of Criminal

---

[2] The United States raises this argument only briefly, asserting that it will more fully argue the issue if the Court grants the Corporate Entities leave to intervene. (*Id.* at p. 7.)

8

Procedure make no reference to a motion to intervene and that it is, therefore, rare for a third party to intervene in a criminal action. *See United States v. Aref*, 533 F.3d 72, 81 (2nd Cir. 2008); *United States v. Martoma,* 962 F.Supp.2d 602, 605 (S.D.N.Y. 2013); *United States v. Lundergan*, 2019 WL 3503977 at * 2 (E.D. Ky. Aug. 1, 2019). Nonetheless, exercising their inherent power to manage their cases, federal courts have permitted third parties to appear in criminal cases under certain circumstances. *See, e.g., United States v. RMI Co*., 599 F.2d 1183, 1186 (3rd Cir. 1979) (allowing intervention by third party affected by disclosure or subpoena of privileged information); *Martoma*, 962 F.Supp.2d at 605-606 (same); *United States v. Jenkins*, 2012 WL 5868907 at * 2-3 (E.D. Ky, Nov. 20, 2012) (denying formal intervention but nonetheless allowing newspaper to file a motion in criminal case challenging the constitutionality of local court rules limiting access to jurors and juror information). *See also United States v. Perry*, 360 F.3d 519, fn 10 (6th Cir. 2004) (allowing private party to appeal district court order vacating judgment lien obtained against criminal defendant.); *Aref*, 533 F.3d at 81 (noting that "motions [to intervene] are common in this Circuit to assert the public's First Amendment right of access to criminal proceedings").

For the following reasons, the Court will allow the Corporate Entities to file their Motion to Shifts Costs in the instant case. It is undisputed that, during the May 12, 2020 status conference, the United States requested that this Court allow it to file its Motion to Enforce Administrative Subpoenas against the non-party Corporate Entities in the instant criminal case. The Court agreed to do so and, in fact, considered and granted the Motion in a lengthy decision.[3] It is entirely disingenuous for the

---

[3] Indeed, in its September 15, 2020 Opinion, the Court specifically found as follows: "The Court first addresses the issue of whether the instant Motion [to Enforce Administrative Subpoenas] is properly before this Court. For the following reasons, the Court finds that it is. As the United States correctly notes, during a telephone conference with counsel on May 12, 2020, the Government advised the Court that it intended to file a motion to enforce the administrative subpoenas at issue. See Non-Document Order dated May 12, 2020. At that time, the Court 'advised that any motion seeking the

United States to now argue that the Corporate Entities should not be permitted to file a motion in this case related to those very same subpoenas. Indeed, the United States does not even attempt to explain this inconsistency in its argument.

The Court does note that the Sixth Circuit has stated, in dicta, that "no mechanism exists for a private citizen to intervene in a criminal case." *Perry*, 360 F.3d at fn 10. The Court will, therefore, not grant formal intervention to the Corporate Entities. The Sixth Circuit has also, however, acknowledged that "we have not always required intervention" and has allowed non-parties to assert their interests in criminal cases under certain circumstances. *Id.* Given that the United States itself opened the door to this Court's evaluation of the administrative subpoenas at issue in this case, the Court will grant the Corporate Entities leave to file, *instanter*, their Motion to Shift the Costs of responding to those subpoenas. Thus, the Motion to Shift Costs (Doc. No. 124-1) is deemed filed as of the date of this Order.

In its Brief in Opposition, the United States briefly addresses the merits of the Corporate Entities' request for reimbursement of costs but suggests that it anticipates the opportunity to more fully address the Motion to Shift Costs if the Court grants leave to file. (Doc. No. 126 at p. 7.) The Court will, therefore, allow the United States to file a complete response to the Corporate Entities' Motion to Shift Costs (Doc. No. 124-1) within fourteen (14) days of the date of this Order.

---

enforcement remedy [pursuant to 18 U.S.C. § 3486] can be filed with this Court, as distinguished from the miscellaneous duty judge.' (*Id.*) Defendants raised no objection to this procedure during the conference call. (*Id.*) Having failed to object at the time, the Court is not persuaded by Defendants' attempt to now argue that this motion is not properly before the Court because the Corporate Entities are not parties to the litigation." (Doc. No. 119 at pp. 46-47.)

10

**III. Conclusion**

For all the reasons set forth above, the Corporate Entities' Motion for Leave (Doc. No. 124) is DENIED to the extent it seeks formal intervention but GRANTED to the extent it seeks leave to file a Motion to Shift Costs, *Instanter*. The Motion to Shift Costs (Doc. No. 124-1) is deemed filed as of the date of this Order. The United States shall file a complete response within fourteen (14) days of the date of this Order.

**IT IS SO ORDERED.**

Date: March 25, 2021

    *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE

11