IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **United States of America,** | Case No. 1:18cr33 |
| **Plaintiff,** | |
| -vs- | JUDGE PAMELA A. BARKER |
| **Ashis Rakhit, et al.,** | **MEMORANDUM OPINION AND ORDER** |
| **Defendants** | |

Currently pending is Defendants' Joint Motion to Strike Surplusage from the Superseding Indictment. (Doc. No 164.) The United States filed a Brief in Opposition on July 21, 2021. (Doc. No. 189.) For the following reasons, Defendants' Joint Motion is denied,

Defendants Ashis Rakhit and Jayati Gupta Rakhit (collectively, "Defendants") move to strike paragraphs 36(l), 38(d), and 38(e) as surplusage from the Superseding Indictment. (Doc. No. 164, PageID# 3921.) In these paragraphs, the United States alleges that it was part of Defendants' scheme to defraud, and an object of their health care conspiracy to provide, "illegal controlled substance prescriptions to patients" to induce patients into attending recurring office visits and/or undergoing medically unnecessary procedures. (Doc. No. 46, ¶¶ 36(l), 38(d), 38(e).) Defendants argue that the criminal fraud statutes require a scheme to "aim to obtain money or property" from the victim—here, the health care benefit programs. (Doc. No. 164, PageID# 3921.) Defendants contend that the United States does not allege that Defendants obtained money or property from any health care benefit program in direct recompense for writing such prescriptions. (*Id.*) Absent such an allegation that Defendants were paid for issuing allegedly illegal prescriptions, Defendants contend that "alleged illegal prescribing cannot form part of a health care fraud scheme." (*Id.*)

The United States argues that Defendants' Motion fails for several reasons, including that Defendants attempt to rewrite the statute by excising the first of two alternative means of committing health care fraud under § 1347. (Doc. No. 189, PageID# 4230.) Second, the United States contends that Defendants misconstrue the latter means—obtaining money or property of a health care benefit program through false pretenses—as not only requiring that the scheme concern money or property, but also that Defendants must directly obtain profit from the violation. (*Id.* at PageID# 4231.) Third, the United States contends that Defendants "conflate a fraud scheme's objectives, manner and means, and acts in furtherance (which may all be alleged in an indictment and proved at trial) with the scheme's chargeable execution events—the misstatements connected to claims for payment." (*Id.*)

Per Fed. R. Crim. P. 7(d), "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." Such a motion "addresses itself to the sound discretion of the district court." *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974). "A motion to strike surplusage should be granted only where it is clear that the language is irrelevant and prejudicial." *United States v. Neller*, 229 F.3d 1154, at *2 (6th Cir. 2000) (Table) (citing *United States v. Moss*, 9 F.3d 543, 550 (6th Cir.1993)). "As this court stated in *United States v. Moss:* '[I]f the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant).'" *Id.* (quoting *Moss*, 9 F.3d at 550) (internal quotations omitted).

The Court concludes that Defendants' Motion must be denied. Defendants overlook § 1347(a)(1)'s means of committing fraud and focus only on § 1347(a)(2)'s means. This argument fails. As set forth in the statute, there are two alternative means of committing health care fraud:

2

> § 1347. Health care fraud.
>
> (a) **Whoever knowingly and willfully executes**, or attempts to execute, **a scheme** or artifice—
> (1) **to defraud any health care benefit program**; or
> (2) **to obtain**, by means of false or fraudulent pretenses, representations, or promises, **any of the money or property owned by**, or under the custody or control of, **any health care benefit program**,
>
> in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both. If the violation results in serious bodily injury (as defined in section 1365 of this title), such person shall be fined under this title or imprisoned not more than 20 years, or both; and if the violation results in death, such person shall be fined under this title, or imprisoned for any term of years or for life, or both.

18 U.S.C. § 1347 (emphasis added). The Sixth Circuit Pattern Instructions define a "scheme to defraud" to include "any plan or course of action by which someone intends to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises." Pattern Crim. Jury Instr. 6th Cir. § 10.05 (2021 ed.). Thus, taken together, an individual may commit health care fraud by knowingly and willfully executing a scheme to defraud (*i.e.*, a plan to deprive another of money or property by means of false pretenses) any health care benefit program. *Id.* This is precisely what is alleged in the indictment: that Defendants committed health care fraud by executing a scheme to defraud in which Defendants allegedly bribed patients with controlled substance prescriptions to attend unnecessary appointments and undergo unnecessary procedures so that Defendants could falsely bill health care benefit programs for the unnecessary appointments and procedures. Such allegations are not surplusage and should not be stricken.

Moreover, *Kelly v. United States* is distinguishable from the instant case. In *Kelly*, the officials' scheme did not violate the honest services fraud statute because the officials did not seek to obtain the Port Authority of New York and New Jersey's money or property. *Kelly v. United States*,

3

140 S. Ct. 1565, 1573-74 (2020).  Although the officials' scheme led to some "implementation costs" in the form of Port Authority employees' time and labor, such money and property played only a "bit part" in their scheme and was not the officials' overall objective.  *Id.*  Conversely, here, the government alleges that Defendants' overall objective was to obtain the money of health care benefits programs by inducing patients—via these controlled substances prescriptions—to attend unnecessary medical visits and undergo unnecessary medical procedures.  (Doc. No. 46, ¶¶ 36-41.)  Defendants then submitted fraudulent claims on these unnecessary procedures and were thus enriched.  (Doc. No. 46, ¶¶ 36-41.)  In other words, these prescriptions allegedly served as a way to increase the amount by which Defendants were enriched.  Unlike in *Kelly*, then, the purpose of Defendants' alleged scheme was to obtain the money and property of health care benefits programs.

Moreover, evidence of such prescriptions is intrinsic to the allegations related to Defendants' purported scheme to defraud.  *See U.S. v. Barnes*, 49 F.3d 1144, 1147 (6th Cir. 1995).  Counts 1 through 41 charge Defendants with various scheme-based offenses, including that Defendants induced patients to attend medical visits and undergo procedures with prescriptions for controlled substances.  Such evidence is inextricably linked with the allegations set forth in the complaint.

Defendants' Joint Motion to Strike Surplusage from the Superseding Indictment is denied.

**IT IS SO ORDERED.**

    *s/Pamela A. Barker*

PAMELA A. BARKER
Date: July 28, 2021    U. S. DISTRICT JUDGE