IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:18-CR-33 |
| Plaintiff, | |
| -vs- | JUDGE PAMELA A. BARKER |
| ASHIS K. RAKHIT AND JAYATI GUPTA RAKHIT, | MEMORANDUM OPINION AND ORDER |
| Defendants | |

This matter comes before the Court upon Defendants' Joint Motion *In Limine* To Exclude Evidence of Alleged Patient Harm filed on July 14, 2021. ("Defendants' Motion"). (Doc. No. 161.) On July 21, 2021, the United States of America filed the Government's Opposition to Defendants' Motion ("the Government's Opposition). (Doc. No. 187.) For the reasons set forth below, Defendants' Motion is GRANTED IN PART AND DENIED IN PART.

In their Motion, Defendants ask this Court to exclude evidence of alleged patient harm at trial, asserting that [e]vidence that a patient was allegedly harmed after receiving a medical procedure or a prescription is of no consequence to determining this action." (Doc. No. 161, PageID # 3900.) And, citing this Court's Memorandum Opinion and Order, Doc. No. 172 at p. 3, and *United States v. Robinson*, No. 1:16-cr-98 (D.D.C June 19, 2017), Defendants argue that "[a]s a matter of basic logic, what happened to a patient *after* a medical procedure was performed has no relevance to determining whether that procedure was justified in the first place." Defendants quote from *Robinson* to wit: "'Health events that occurred after Defendant issued a prescription do not speak in any significant way to the propriety of Defendant issuing prescriptions in the first place.'" (Doc. No. 161, PageID #s 3900-01.) Defendants argue that evidence of patient harm is

irrelevant and "even if marginally probative, "its prejudicial and inflammatory nature means that it should be excluded under Rule 403." (Doc. No. 161, PageID # 3901.) Moreover, Defendants assert that the rule other courts have applied in precluding evidence of patient harm in fraud cases (i.e., it is irrelevant and/or unduly prejudicial or inflammatory), "is the same in drug distribution cases where the government does not allege that drugs caused death or serious bodily injury[,]" citing *e.g., United States v. Ignasiak*, 667 F.3d 1217, 1236-37 (11th Cir. 2012), *United States v. Kostenko*, No. 5:16-cr-00221, 2017 U.S. Dist. LEXIS 57975, at *5 (S.D. W, Va Apr. 17, 2017), and *United States v. Robinson*, No, 1:16-cr-98 (D..D.C June 19, 2017), ECF No. 122. (Doc. No. 161, PageID #s 3902-03.) Defendants' final statement is that "the Court should exclude evidence of alleged patient harm." (*Id.*)

In response, the government represents that "[i]n light of the Court's ruling that the government may not introduce evidence of the harm (death) that resulted from the medically unnecessary procedure alleged in Count 9 regarding the insertion of a stent into MY (R. 172: Memorandum Opinion and Order, pp. 7-10), the government concedes that it has no additional arguments that would alter the Court's analysis as it relates to harm associated with the health care fraud counts" and therefore, the government "does not intend to introduce evidence of any patient harm from medically unnecessary tests or procedures." (Doc. No. 187, PageID # 4222.) However, the government contends and this Court agrees that "if the Defendants open the door to this evidence by suggesting, for example, that their tests and procedures *only* result in health benefits and/or valuable clinical data or *never* cause actual harm, then the government should be allowed to rebut that claim with evidence of patient harm." (*Id.*)

While conceding that it will not introduce evidence of any patient harm from medically unnecessary tests or procedures given this Court's Memorandum Opinion and Order (Doc. No.

172), with the caveat noted immediately above, the government does assert that "[t]he analysis is different for the Controlled Substances Act counts." (Doc. No. 187, PageID # 4223.) According to the government, "[t]here are two types of harm from illegal prescribing that are both relevant and not unfairly prejudicial[:] [1] harm to patients for whom the Indictment alleges that the Defendants wrote illegal controlled substance prescriptions[; and] *** [2] harm to patients outside of the indictment." (*Id.*)

As to the first type, the government argues that evidence of patient harm is "clearly intrinsic and probative" since the government expert Dr. Landers noted that "the Defendants were specifically aware of actual harm to certain patients from abuse of controlled substances and they persisted in prescribing them controlled substances." (*Id.*) The government cites to Dr. Landers' report of March 12, 2020, at pp. 56-58, to support its assertion that for one of the patients in the Indictment, there was documentation of poisoning by various drugs that led to hospitalizations, the use of Narcan and artificial ventilation, and "yet Defendant Ashis Rakhit failed to use drug screens and pill counts and continued to prescribe controlled substances to the patient." (*Id.*) The government contends that "[t]his evidence of patient harm is crucial to help demonstrate that controlled substance prescriptions for this patient (and other similarly situated patients) is outside the usual course of medical practice and not for a legitimate medical purpose." (*Id.*)

As to the second type, and citing *United States v. Boulier*, 518 F. App'x 848, 855 (11th Cir. 2013), the government argues that evidence of harm to patients outside of the indictment "serves the similar purpose of demonstrating that the Defendants were aware that their patients were misusing their prescriptions." (*Id.*) The government asserts that the three cases cited by Defendants, *Ignasiak*, *Kostenko*, and *Robinson* are distinguishable.

Upon due consideration of the arguments made by counsel for the parties, and the authority cited in support thereof, the Court finds that evidence of alleged patient harm for patients for whom the Indictment alleges that Defendants wrote illegal controlled substance prescriptions and alleged harm to patients outside of the Indictment is probative of Defendants' knowledge that their patients were misusing their prescriptions, a factor that may suggest that Defendants distributed controlled substances without a legitimate medical purpose and outside the usual course of professional practice. *Boulier*, at 855. Indeed, in *Robinson*, relied upon by Defendants, the court noted that "[t]o the extent Defendant knew about some adverse health event related to a patient's oxycodone use *before* he issued them a prescription, this evidence would properly be considered by the jury as part of the patient's history in determining whether Defendant issued a prescription 'for a legitimate medical purpose' and while 'acting in the usual course of professional practice.' 21 C.F.R. § 1306.04. Its probative value is not outweighed by any Rule 403 consideration and it will not be excluded." *Robinson*, at *4.

However, as to evidence of alleged harm to patients outside of the Indictment, the Court finds that the potential for unfair prejudice and confusion exists because such evidence would create a risk of convictions based on association, i.e., the jury would see a pattern of behavior and convict for individual counts that were not properly proved. *See Kosenko*, at *5, citing and relying on *United States v. Tran Trong Cuong*, 18 F.3d 1132, 1141 (4th Cir. 1994).

Accordingly, Defendants' Motion is GRANTED IN PART AND DENIED IN PART. Specifically, the government is precluded from introducing evidence of any patient harm from medically unnecessary tests or procedures, unless Defendants open the door as stated previously. The government is permitted to introduce evidence of patient harm as relates to the Controlled Substances Act counts, if and to the extent the evidence demonstrates that Defendants had

knowledge of some adverse health event related to a charged patient's controlled substance use before they issued that patient a controlled substance.  The government is precluded from introducing patient harm for patients outside of the Indictment.

    **IT IS SO ORDERED.**

Date:  August 2, 2021

                                                     *s/Pamela A. Barker*
                                                    PAMELA A. BARKER
                                                    U. S. DISTRICT JUDGE